UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-6461CAS (CWx) | Date | November 2, 2009 |
|---|---|---|---|
| Title | JAMES EUGENE KLEIN v. RAYTHEON COMPANY, ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| CATHERINE JEANG | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: | |
| Wayne Smith | Douglas Wickham  Lauren Howard | |

**Proceedings:** **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT** (filed 09/25/09)

## I.   INTRODUCTION

On August 20, 2008, plaintiff James Eugene Klein filed suit against defendant Raytheon Company ("Raytheon") in Los Angeles County Superior Court alleging claims for (1) discrimination pursuant to the Fair Employment and Housing Act ("FEHA"), Cal. Govt. Code §§ 12900 *et seq.*; (2) violations of public policy; (3) retaliation in violation of public policy; and (4) failure to accommodate in violation of Cal. Govt. Code § 12940. Plaintiff alleges that on October 11, 2007, he was constructively terminated by Raytheon due to his back problems and mental health conditions and was eventually replaced by a healthy, younger employee.  Compl. ¶¶ 9-10; Mot. at 4.

On October 1, 2008, Raytheon removed the instant action to this Court on the basis of diversity jurisdiction.  On November 20, 2008, the Court denied plaintiff's motion for remand.

On September 25, 2009, Raytheon filed a motion for summary judgment as to all claims.  On October 14, 2009, plaintiff filed his opposition thereto.  On October 26, 2009, Raytheon filed its reply.  After carefully considering the arguments set forth by the parties, the Court finds and concludes as follows.

## II.   BACKGROUND

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-6461CAS (CWx) | Date | November 2, 2009 |
|---|---|---|---|
| Title | JAMES EUGENE KLEIN v. RAYTHEON COMPANY, ET AL. | | |

Plaintiff began his employment with Raytheon on June 6, 2005, as a Senior Principal Physics Engineer—a level E06 engineer—when he was 59 years old. Plaintiff's Statement of Undisputed Facts ("PSUF") ¶ 1; Defendant's Statement of Uncontroverted Facts ("DSUF") ¶ 1. In June 2006, plaintiff slipped at his home and hurt his lower back, and his back pain became progressively worse. PSUF ¶ 3. On November 13, 2006, plaintiff went on medical leave pursuant to the Family and Medical Leave Act and underwent back surgery in January 2007. DSUF ¶ 3. Plaintiff returned to work with no restrictions on April 30, 2007. PSUF ¶ 3.

During the last two weeks of July 2007, plaintiff first noticed that he was having trouble thinking and remembering things from his experience that he should have remembered. PSUF ¶ 4. Plaintiff told his primary care physician that he was having trouble remembering things, and that he was suffering from a loss of enjoyment in his work and from life in general. PSUF ¶ 5. Plaintiff's physician informed plaintiff that his condition might be the result of residual pain from his prior back surgery, and prescribed pain medication, anti-depressants, and insomnia medication. PSUF ¶ 5.

In August 2007, plaintiff was assigned a project to draft an optical design guide ("guide") for general use within his department, wherein plaintiff was required to summarize the department's current best practices and procedures. PSUF ¶ 6; DSUF ¶¶ 18-19. Plaintiff was not given any specific directions as to the project's benchmarks. PSUF ¶ 6. Instead, plaintiff was expected to use his knowledge, information, and experience to draft the guide. PSUF ¶ 7.

In mid-August 2007, plaintiff told his physician that he did not think the anti-depressant medication was working. PSUF ¶ 8. The doctor increased plaintiff's dosage, but it did not help. PSUF ¶ 8. Plaintiff began to struggle with his work on the guide. PSUF ¶¶ 9-10. Plaintiff would sit in front of his computer with the Word program opened but was unable to think, and his mind would go "blank for hours at a time." PSUF ¶ 13. In September, plaintiff had a "fairly long discussion" with Lacy Cook ("Cook"), plaintiff's immediate supervisor, and a "talk" with Clay Shannon ("Shannon"), his department head, where plaintiff told them he "was having some real problems figuring out what . . . to do for" the project. Klein Depo. at 63; PSUF ¶ 12. In his meeting with Cook, plaintiff found that "all of a sudden [Cook] was talking gibberish," so plaintiff "begged off the end of the meeting" and left the room." Klein Depo. at 63; PSUF ¶ 12. However, plaintiff never informed Cook that he had problems understanding

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-6461CAS (CWx) | Date | November 2, 2009 |
|---|---|---|---|
| Title | JAMES EUGENE KLEIN v. RAYTHEON COMPANY, ET AL. | | |

what he was saying in the meeting. Klein Depo. at 63.

      Given plaintiff's E06 level, Shannon expected that plaintiff would periodically provide status reports regarding the progress of the guide. DSUF ¶ 21. Because by mid to late September 2007, Shannon had not received any reports, Shannon checked in with plaintiff to determine the status of the project. DSUF ¶ 22-23. Shannon called plaintiff several times, stopped by plaintiff's office multiple times, and sent email messages to plaintiff, but was initially unsuccessful in obtaining a status report from plaintiff. DSUF ¶ 23-25. On October 2, 2007, plaintiff and Shannon finally met to discuss plaintiff's progress on the guide, and plaintiff presented Shannon with a draft of the guide. DSUF ¶ 28. The draft included approximately three to four pages of text. Klein Depo. at 127. Given that plaintiff had been working on the guide exclusively during August and September 2007, Shannon was surprised by plaintiff's apparent lack of progress, and assumed plaintiff had not spent more than one to two weeks on the project. DSUF ¶ 28-30; Shannon Depo. at 73. Shannon "tried to encourage [plaintiff] to expand the scope, get more detail, and come back . . . with something [they] could really review." Shannon Depo. at 75.

      On October 3, 2007, Shannon and plaintiff were informed that at most there were 38.5 hours remaining on the project, out of a total of 340 hours allotted for the project. DSUF 32-34; Shannon Depo. at 79, Klein Depo. at 110-13, Exhib. 5. Plaintiff was directed to stop charging for his work on the project. DSUF ¶ 36. Later on October 3, 2007, Shannon sent an email to plaintiff expressing his surprise in comparing plaintiff's work product on the guide to the total amount of time plaintiff had billed to the guide, and requested that they meet the following day to discuss the issue. DSUF ¶ 38-39; Klein Depo. Exhib. 7. On October 4, 2007, plaintiff sent an email to Shannon and Cook stating in part:

> I have to agree with you. My progress has disappointed me too. I have been fighting a lot of depression since coming back from my back surgery in May and my work has suffered considerably. I have seen my MD about this but his prescriptions have not helped at all. . . . I don't know how to explain myself. I've never let my own professional work slip this badly. . . . I think I better talk to someone in HR to help me get through this. I have had a lot of trouble staying awake most of the time and I find myself stuck in neutral a lot. . . . I'd like to take today and tomorrow on my own nickle and get a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-6461CAS (CWx) | Date | November 2, 2009 |
|---|---|---|---|
| Title | JAMES EUGENE KLEIN v. RAYTHEON COMPANY, ET AL. | | |

> recommendation from you via email as to who I should go talk to on Monday. I find this really hard to admit to myself and to you. Please keep this between yourself and Lacy till I come in on Monday. . . .

PSUF ¶ 16.

Plaintiff also called Shannon on his cell phone, where he informed Shannon that he "had been fighting depression that kept getting worse," and that he was going to call the mental health phone number on the back of his medical insurance card. PSUF ¶ 15. Following plaintiff's email, Shannon and Cook met with Jennifer Shamaly, the Human Resource Manager, to discuss the issue of plaintiff's billed time to the project. PSUF ¶ 17. Shamaly advised them that Human Resources would begin investigating plaintiff's potential improper charging of time to the budget for the guide. DSUF ¶ 55; Shannon Depo. at 146. Shannon and Cook also discussed plaintiff's depression with Shamaly, and Shamaly gave them contact information for Raytheon's Employee Assistance Program ("EAP Program"). PSUF ¶ 17, Shamaly Depo. at 24. Shannon then sent plaintiff an email on October 4, 2009 sometime after 3pm stating:

> Thanks for the reply back. We did go speak to HR about the situation (this is purely confidential with them and required by us in situations such as this). They offered up a contact to call to perhaps council [sic] you in seeking help or options for such. . . . They have a depression condition center and can offer assistance and many services you might be able to take advantage of. I highly recommend that you make contact with them, the sooner the better so you can see what options are available for you to take advantage of. Please plan to come see either Lacy or myself on Monday when you get in. You can perhaps let us know what you might have learned thru the Raytheon help line. We can also discuss what the next steps might be to help get you back on track. . . .

PSUF ¶ 19.

At 3:42pm on October 4, 2009, plaintiff sent an email to Cook and Shannon informing them that he spoke with an EAP psychologist. PSUF ¶ 20. Plaintiff also stated in the email that he made an appointment with a mental health professional, Dr. Brock Summers, that afternoon. PSUF ¶ 20; Exhib. 3; DSUF ¶ 48. Dr. Summers prescribed plaintiff a new medication to treat his depression. DSUF ¶ 50. At 4:15pm on October 4, 2009, Shamaly sent an email to Joan Procopio, a Senior Manager of Business Ethics and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-6461CAS (CWx) | Date | November 2, 2009 |
|---|---|---|---|
| Title | JAMES EUGENE KLEIN v. RAYTHEON COMPANY, ET AL. | | |

Compliance, and Barry Caires, Security Investigator, to commence an investigation of plaintiff regarding a comparison of his badge records[1] and his time card. PSUF ¶ 22; Pl. Exhib. 4.

Plaintiff returned to work on October 8, 2009, whereupon he met with Shannon and Cook. PSUF ¶ 25; Klein Depo. at 32-33. Plaintiff attempted to explain the nature of his depression, and explained that he "had begun to feel better than [he] had felt in several months because of a change in . . . medication." PSUF ¶ 25; Klein Depo. at 32-33. Shannon smiled and told plaintiff that the medication that he had been prescribed took several weeks rather than four days to make a difference. PSUF ¶ 25; Klein Depo. at 32-33. Following this meeting, plaintiff confirmed his discussions with Cook and Shannon in an email, specifying that he would no longer be working from home, that his hours would be 8:30am to 5:30pm, and that he would no longer request a so called "9/80" schedule. PSUF ¶ 25; Pl. Exhib. 5. It is undisputed that plaintiff never requested to work at home as an accommodation for his mental health issues, nor did any doctor prescribe such a work restriction. DSUF ¶ 118.

On October 8, 2007, Caires provided Shamaly and Procopio with a document that compared plaintiff's actual time spent at work with the time appearing on plaintiff's time cards, which he had prepared and in which he charged his time to the guide project. DSUF ¶ 61. This comparison showed major discrepancies and tended to establish that plaintiff was recording and billing substantial amounts of time on his time sheets/entries during periods when he was not physically at work. DSUF ¶ 61. Specifically, Caires estimated that there was approximately an 236 hour discrepancy between his badge records and Klein's time records. DSUF ¶ 61. Because plaintiff claimed he was working from home on many occasions even though he did not have an approved telecommuter agreement, Procopio requested plaintiff's VPN records to determine to what extent plaintiff was accessing his Raytheon computer from home through a VPN link, and was thus potentially working on the guide project from home. DSUF ¶ 62. However, plaintiff's VPN records only reflected forty hours of VPN access to the company's computers within the previous 90 day period. DSUF ¶ 63. Thus, even taking into account the forty hours of plaintiff's VPN access, there remained a 200 hour discrepancy

---

[1] Plaintiff's badge records would reflect his entries and departures from Raytheon's premises. DSUF ¶ 57.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-6461CAS (CWx) | Date | November 2, 2009 |
|---|---|---|---|
| Title | JAMES EUGENE KLEIN v. RAYTHEON COMPANY, ET AL. | | |

between plaintiff's time records in which he billed time for working on the guide and the time when plaintiff was actually at work or was remotely working from home. DSUF ¶ 64.

On October 11, 2007, plaintiff met with Shamaly, Procopio, Caires, and Shannon, wherein Procopio opened the meeting by telling plaintiff that management had concerns regarding the charges to the design guide and that there was not sufficient work product for the amount of hours that were charged. PSUF ¶ 35. Then plaintiff discussed his medical issues, which included chronic pain from his back surgery, his depression and insomnia, and the fact that he was on medication for his depression. PSUF ¶ 36. According to plaintiff, Caires then told plaintiff that his mental disability was a "load of crap" and claimed that plaintiff's depression was as if "an alcoholic . . . ran over some people, and then went to court and claimed he wasn't responsible because he had an addiction and he was sick," and Procopio and Caires repeatedly called plaintiff a "liar," a "thief," and a "fraud." PSUF ¶ 41. Plaintiff was offended by their comments. PSUF ¶ 41. According to plaintiff, Caires then told him that after Raytheon finished its investigation, plaintiff would also be investigated by the Department of Defense, and that the investigators had "no doubts in their minds whatsoever" that plaintiff would never be able to work in the aerospace industry again. PSUF ¶ 42. According to plaintiff, Caires further stated that there could be criminal implications. PSUF ¶ 42. Procopio may have stated that plaintiff could lose his security clearance. PSUF ¶ 44; Shamaly Depo. at 62. According to plaintiff, Procopio told plaintiff once or twice that "no one would believe" that plaintiff was sick but tried to keep doing his job, or that his disability had affected his productivity. PSUF ¶ 46. Plaintiff begged the investigators not to fire him, and queried whether "there was an honorable way out of this?" PSUF ¶ 50. Caires responded that "if you give us your badge and let us walk you out the front door, we will forget about everything that has gone on in this meeting . . . . [and] [n]o one from any other company will be able to find out that this meeting occurred, and you can leave." PSUF ¶ 51. Cook understood that the alternatives to resignation included a termination which would be reflected in his record, the loss of his security clearance, and legal action. PSUF ¶ 72. Although plaintiff told the investigators that he would not resign, after the meeting continued, plaintiff felt he could no longer verbally spar about his truthfulness. PSUF ¶ 56. Plaintiff felt scared and cornered, and thus at the end of the meeting plaintiff took off his employee badge and put it on the table in front of him, but did not use the word "resign." PSUF ¶¶ 56-57.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-6461CAS (CWx) | Date | November 2, 2009 |
|---|---|---|---|
| Title | JAMES EUGENE KLEIN v. RAYTHEON COMPANY, ET AL. | | |

Plaintiff was escorted to his office to collect some of his possessions, and then escorted to his car where Caires removed the parking sticker from his car before he drove away. PSUF ¶ 59. Later that day, plaintiff met with his psychiatrist and reiterated that he had been forced or coerced to resign. PSUF ¶ 60. After plaintiff left Raytheon, five people were hired into the department, ranging in age from their twenties to their fifties. PSUF ¶ 74; Shannon Depo. at 142-43.

### III.  LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine issue as to any material fact" and "the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each cause of action upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party has sustained its burden, the nonmoving party must then identify specific facts, drawn from materials on file, that demonstrate that there is a dispute as to material facts on the elements that the moving party has contested. See Fed. R. Civ. P. 56(c). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888 (1990). See also Celotex Corp., 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322. See also Abromson v. American Pacific Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-6461CAS (CWx) | Date | November 2, 2009 |
|---|---|---|---|
| Title | JAMES EUGENE KLEIN v. RAYTHEON COMPANY, ET AL. | | |

claims at issue. See Matsushita, 475 U.S. at 587.

### III. DISCUSSION

#### A. Constructive Termination

To establish constructive termination, an employee must prove that (1) he was subjected to intolerable or aggravating working conditions, (2) the employer "either intentionally created or knowingly permitted" such working conditions, and (3) "that a reasonable person in the employee's position would be compelled to resign." Turner v. Anheuser-Busch, Inc., 7 Cal. 4th 1238, 1251 (1994); Garamendi v. Golden Eagle Ins. Co., 128 Cal. App. 4th 452, 471-72 (2005).

Raytheon argues that plaintiff cannot establish any of the elements necessary to demonstrate constructive termination, and thus that he cannot establish his claims for discrimination, wrongful termination, and retaliation. Mot. at 12. First, Raytheon argues that plaintiff ties his constructive termination claim solely to the conduct at the October 11 meeting where he claims he was coerced to resign, but that the conduct alleged in the meeting is not sufficient to constitute intolerable or aggravating working conditions. Mot. at 12-14 (citing Turner, 7 Cal. 4th at 1255 ("single, trivial, or isolated acts of misconduct are insufficient to support a constructive discharge claim"); Huskey v. City of San Jose, 204 F.3d 893, 896-98 (9th Cir. 2000); Gibson v. Aro Corp., 32 Cal. App. 4th 1628 (1995)). Raytheon asserts that while plaintiff claims that he was called a liar, a thief, and a fraud multiple times throughout the meeting and was told his story was a "load of crap," courts consistently reject constructive termination claims based on the use of harsh or threatening language at a single meeting. Id. (citing Ferraro v. Kellwood Co., 440 F.3d 96, 103 (2d Cir. 2006); Spence v. Maryland Cas. Co., 995 F.2d 1147, 1147 (2d Cir. 1993); Mosley v. Bojangles Rest., Inc., 2004 WL 727033 (M.D. N.C. 2004)). Raytheon further asserts that even if its employees threatened to terminate plaintiff's employment and his Department of Defense security clearance, such threats do not amount to a constructive termination. Id. (citing Helgeson v. Amer. Internat'l Group, Inc., 44 F. Supp. 2d 1091, 1098 (S.D. Cal. 1999); Rowell v. Bellsouth Corp., 433 F.3d 794, 806 (11th Cir. 2005); Agnew v. BASF Corp., 286 F.3d 307, 310 (6th Cir. 2006)).

Second, Raytheon argues that plaintiff's constructive termination claim fails because Raytheon had no notice of the purportedly intolerable conditions. Mot. at 15

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-6461CAS (CWx) | Date | November 2, 2009 |
|---|---|---|---|
| Title | JAMES EUGENE KLEIN v. RAYTHEON COMPANY, ET AL. | | |

(citing Turner, 7 Cal. 4th at 1247 ("An employer must either deliberately create the intolerable working conditions that trigger the resignation or, at a minimum, must know about them and fail to remedy the situation in order to force the employee to resign."); Gibson v. Aro Corp., 32 Cal. App. 4th 1628 (1995)). Raytheon argues that it was not on notice that plaintiff believed the events at the meeting were "intolerable," because plaintiff never informed anyone at Raytheon that he felt forced to resign. Id. at 16. Third, Raytheon argues that because plaintiff was presented with a reasonable alternative to resignation, his constructive termination claim fails. Id. at 16 (citing Turner, 7 Cal. 4th at 1246 ("The focus is on whether the resignation was coerced, not whether it was simply one rational option for the employee."); Addy, 44 Cal. App. 4th at 218; Spence, 995 F.2d at 1157).

     Plaintiff responds that he has presented sufficient evidence to show that he was constructively terminated, because plaintiff declared that at the October 11 meeting four Raytheon employees threatened plaintiff with (1) an internal investigation, (2) a Department of Defense investigation, (3) criminal charges, and (4) the permanent stripping of plaintiff's security clearance, even though they knew plaintiff was depressed and suffering from insomnia. Opp'n at 16-18 (citing Keithley v. Civil Service Bd., 11 Cal. App. 3d 443, 449 (1970) ("A coerced resignation is tantamount to a discharge."); Turner, 7 Cal. 4th at 1246-47 ("The proper focus is on whether the resignation was coerced, not whether it was simply one rational option for the employee."); Valdez v. City of Los Angeles, 231 Cal. App. 3d 1043 (1991) ("Whether conditions were so intolerable as to justify a reasonable employee's decision to resign is normally a question of fact."); Thompson v. Tracor Flight Sys., Inc., 86 Cal. App. 4th 1156, 1170-71 (2001) ("[The] determination that the 'reasonable employee' would have been compelled to quit because of defendant's conduct is quintessentially a jury function."). Indeed, plaintiff argues that a threat to one's ability to earn a livelihood, which would occur if plaintiff were stripped of his security clearance is sufficient to demonstrate constructive termination. Id. at 18 (citing Turner, 7 Cal. 4th at 1246-47; Spevack v. Klein, 385 U.S. 511, 516 (1967)). Furthermore, plaintiff argues that when plaintiff was threatened with criminal prosecution at the October 11 meeting, Raytheon constructively terminated plaintiff because under California law an agreement obtained by threat of criminal prosecution is unenforceable as against public policy. Id. at 17-18 (citing Tiffany & Co. v. Spreckels, 202 Cal. 778, 784 (1927)).

     Raytheon replies that in plaintiff's opposition, he fails to respond to the second and

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-6461CAS (CWx) | Date | November 2, 2009 |
|---|---|---|---|
| Title | JAMES EUGENE KLEIN v. RAYTHEON COMPANY, ET AL. | | |

third elements required to establish a constructive termination claim, and thus summary judgment should be entered in favor of Raytheon. Reply at 4. Raytheon further argues that "situations exist . . . where the employee's decision to resign, is unreasonable as a matter of law." Id. at 6 (citing Scotch v. Art Inst. of California-Orange County, Inc., 173 Cal. App. 4th 986, 1022 (2009)). Raytheon asserts that some of the cases plaintiff cites to prove that he was coerced to resign are not on point, and instead involve the Fifth Amendment privilege against self-incrimination. Id. (citing Spevack, 385 U.S. at 511; Keithley, 11 Cap. App. 3d at 443; Tiffany & Co., 202 Cal. at 778). Raytheon further asserts that plaintiff mischaracterizes the October 11 meeting. Id. at 6-7. Additionally, Raytheon argues that plaintiff has not provided the evidence required to demonstrate that a reasonable person in his shoes and faced with the alleged intolerable working conditions would have felt compelled to resign. Id. at 12 (citing Turner, 7 Cal. 4th at 1250).

The Court finds that the facts viewed in the light most favorable to plaintiff establish a question of fact as to whether (1) plaintiff was subjected to intolerable or aggravating working conditions, (2) Raytheon "either intentionally created or knowingly permitted" such working conditions, and (3) "a reasonable person in the employee's position would be compelled to resign." See Turner, 7 Cal. 4th at 1251. First, a question of fact exists as to whether the conditions that plaintiff alleges occurred at the October 11 meeting could be found to be intolerable or aggravating. Id. Second, a question of fact exists as to whether any of the Raytheon managers at the meeting—Shamaly, Procopio, Caires, or Shannon—constituted "someone in a position of authority" at Raytheon, and thus whether notice of the alleged intolerable condition was provided to Raytheon. Id. at 1250. Third, a question of fact exists as to whether a reasonable person in plaintiff's position at the October 11 meeting would feel compelled to resign. Id.

    **B.    Discrimination Claims**

To withstand an employer's summary judgment motion, a plaintiff who brings Fair Employment and Housing Act ("FEHA") claims of employment discrimination must satisfy the three-part test set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). First, plaintiff must establish a prima facie case that the adverse employment action of which he complains was based on impermissible considerations. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 142 (2000). Second, if plaintiff can establish a prima facie case, Raytheon may present evidence that the challenged

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-6461CAS (CWx) | Date | November 2, 2009 |
|---|---|---|---|
| Title | JAMES EUGENE KLEIN v. RAYTHEON COMPANY, ET AL. | | |

employment action was based on legitimate, nondiscriminatory considerations. Id. Third, if Raytheon satisfies its burden, then the burden shifts to plaintiff to show "that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Id. at 143.

To establish a prima facie case of disability discrimination under FEHA, plaintiff must show that he: (1) suffered from a disability; (2) was otherwise qualified to do his job; and (3) was subjected to adverse employment action because of his disability. Faust v. Calif. Portland Cement Co., 150 Cal. App. 4th 864, 886 (2007). Likewise, to establish a prima facie case of age discrimination, plaintiff must demonstrate that he: (1) was a member of the protected class; (2) was qualified for the position; (3) suffered an adverse employment action; and (4) was replaced by a significantly younger person. Hersant v. Dep't of Social Servs., 57 Cal. App. 4th 997, 1003 (1997).

Raytheon argues that plaintiff's age and disability discrimination claims fail because he cannot establish that he was subjected to an adverse employment action in the form of a constructive termination. Mot. at 18. Raytheon further argues that plaintiff cannot show that any alleged revocation of his accommodation to work from home was an adverse action, because plaintiff admitted that in October 2007 his treating psychiatrist stated that plaintiff could work at the office and did not need an accommodation to work from home. Id. Furthermore, Raytheon argues that plaintiff admitted that in August through October of 2007, he had not secured proper authorization to work at home, and thus no accommodation was ever sought, denied, or revoked. Id.

Raytheon further argues that with regard to plaintiff's age discrimination claim, plaintiff cannot show that he was replaced by a significantly younger person, because no one replaced plaintiff after he left the company nor was anyone assigned to complete the guide project. Mot. at 19. Finally, Raytheon contends that plaintiff cannot show that the alleged adverse action was taken because of his disability or age, because none of the individuals present at the October 11, 2007 meeting said anything ageist nor did anyone make any pejorative statements about Klein's disability. Id. Defendants further contend that plaintiff cannot demonstrate any other conduct or comments to suggest that Raytheon "constructively terminated" him based on any purported disability and/or his age, and therefore plaintiff cannot prove a causal link between his disability or age and his resignation. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-6461CAS (CWx) | Date | November 2, 2009 |
|---|---|---|---|
| Title | JAMES EUGENE KLEIN v. RAYTHEON COMPANY, ET AL. | | |

  Raytheon contends that it had legitimate, nondiscriminatory reasons for its actions. Mot. at 19-20 (citing Schultz v. Spraylat Corp., 866 F. Supp. 1535 (C.D. Cal. 1994); Mixon v. Fair Employment & Hous. Comm'n, 192 Cal. App. 3d 1306, 1317 (1987)). First, Raytheon asserts that based on plaintiff's suspected billing discrepancies, it was legitimate and nondiscriminatory for Shannon to request to more closely monitor plaintiff's activity, and thus to require him to work at the office rather than from home. Mot. at 20. Second, Raytheon asserts that its investigation into allegations that plaintiff was falsifying his time records, and meeting with plaintiff to discuss the matter, was legitimate and nondiscriminatory. Id. at 20 (citing King, 152 Cal. App. 4th at 433; Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1063 (9th Cir. 2002)).

  Raytheon argues that plaintiff has presented no evidence to show that Raytheon intentionally discriminated against him on account of his age or alleged disability, and to the contrary the evidence shows Raytheon's conduct was based on its concerns regarding plaintiff's billing practices. Mot. at 22. Raytheon asserts that plaintiff's own subjective belief as to improper motive does not create a genuine issue of material fact. Id. (citing Horn v. Cushman & Wakefield Western, Inc., 72 Cal. Ap. 4th 798, 816 (1999); Shah, 2008 WL 2676533, at *12)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-6461CAS (CWx) | Date | November 2, 2009 |
|---|---|---|---|
| Title | JAMES EUGENE KLEIN v. RAYTHEON COMPANY, ET AL. | | |

  Plaintiff responds that if Raytheon can establish that it had a legitimate, nondiscriminatory reason for its actions, plaintiff is then merely required to present direct or circumstantial evidence that would permit a rational inference that intentional discrimination was a substantial motivating factor in Raytheon's actions towards plaintiff. Opp'n at 21 (citing Horsford v. Bd. of Trustees of Cal. State Univ., 132 Cal. App. 4th 359, 377 (2005)). Plaintiff argues that four Raytheon employees sat in a room with plaintiff on October 11 and made offensive statements about his disability, taunted and belittled plaintiff, and threatened criminal charges, investigations, and plaintiff's future livelihood. Id. Plaintiff contends that by proffering this evidence, he has shown that the required rational inference could be made.

  Raytheon replies that plaintiff fails to rebut its arguments concerning his failure to maintain a claim for age discrimination. Reply at 18. Raytheon argues that plaintiff was not replaced by anyone younger or older, Raytheon had legitimate, nondiscriminatory reasons for the challenged actions, and plaintiff has no evidence of pretext or unlawful discrimination based on plaintiff's age. Id.

  The Court finds that plaintiff is able to establish a prima facie case of disability discrimination under FEHA, because (1) he suffered from depression, a mental health disability; (2) he was otherwise undisputedly qualified to do his job; and (3) questions of fact exist as to whether he was subjected to adverse employment action because of his disability. See Faust, 150 Cal. App. at 886. Plaintiff can also establish a prima facie case of age discrimination, because (1) he was a member of the protected class because he was over forty years old; (2) he was undisputedly qualified for the position; (3) questions of fact exist as to whether he suffered an adverse employment action; and (4) questions of fact exist as to whether he was replaced by a significantly younger person, as the five people hired after plaintiff left the company ranged in ages from their twenties to their fifties. See Hersant, 57 Cal. App. at 1003.

  The Court further finds that Raytheon can establish that it had legitimate, nondiscriminatory reasons for requiring plaintiff to work at the office rather than at home, for meeting with plaintiff regarding his time records, and for suggesting to plaintiff that he resign, because Raytheon believed that plaintiff was falsifying his time records. Mixon, 192 Cal. App. 3d at 1317.

  Finally, based on the derogatory comments allegedly made by Caires and Procopio

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-6461CAS (CWx) | Date | November 2, 2009 |
|---|---|---|---|
| Title | JAMES EUGENE KLEIN v. RAYTHEON COMPANY, ET AL. | | |

about plaintiff's disability at the October 11 meeting, the Court finds that a question of fact exists as to whether plaintiff can establish pretext regarding his disability claim. See Horsford, 132 Cal. App. 4th at 377; Warren III v. City of Carlsbad, 58 F.3d 439, 443 (9th Cir. 1995) ("[T]he plaintiff who has established a prima facie case need produce very little evidence of discriminatory motive to raise a genuine issue of fact as to pretext. In fact, any indication of discriminatory motive . . . may suffice to raise a question that can only be resolved by a factfinder. Once a prima facie case is established . . . summary judgment for the defendant will ordinarily not be appropriate on any ground relating to the merits because the crux of an [employment discrimination] dispute is the elusive factual question of intentional discrimination.") (internal quotations omitted). However, the Court finds that plaintiff has failed to present evidence that would permit a rational inference that intentional age discrimination was a substantial motivating factor in Raytheon's actions towards plaintiff. See Horsford, 132 Cal. App. 4th at 377. Indeed, plaintiff was first hired at 59, and there is no evidence that his position was filled by anyone younger than he. Accordingly, the Court grants summary judgment on plaintiff's age discrimination claim pursuant to FEHA, but denies summary judgment on plaintiff's disability claim under FEHA.

    **C.    Failure to Accommodate Claim**

    To state a prima face case of failure to accommodate under the FEHA, a plaintiff must establish as a threshold matter that (1) plaintiff suffers from a disability covered by the FEHA; and (2) defendant has failed reasonably to accommodate plaintiff's disability. Jensen v. Wells Fargo Bank, 85 Cal. App. 4th 245, 256 (2000). Under FEHA, an employer has a duty to make reasonable accommodations for an employee's disability unless the employer can demonstrate that doing so would impose an "undue hardship." Prilliman v. United Air Lines, Inc., 53 Cal. App. 4th 935, 947 (1997).

    Raytheon argues that plaintiff never requested accommodations for his mental health issues, nor did his doctors prescribe any such work restrictions, and plaintiff admits that he did not seek to work at home as an accommodation. Mot. at 23. Moreover, Raytheon argues that Shannon made plaintiff aware of the resources available to him to address his mental health issues and encouraged plaintiff to take advantage of those services. Id. Therefore, Raytheon argues that plaintiff never sought, and defendants never denied, any accommodation to plaintiff. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-6461CAS (CWx) | Date | November 2, 2009 |
|---|---|---|---|
| Title | JAMES EUGENE KLEIN v. RAYTHEON COMPANY, ET AL. | | |

  Plaintiff argues that Raytheon could have offered plaintiff a medical leave as a form of reasonable accommodation after plaintiff informed his supervisors that he was suffering from depression, instead of "threatening, accusing, and intimidating plaintiff until he was constructively terminated." Opp'n at 19-20. Plaintiff further argues that he had previously requested, and had been granted, the accommodation of working from home by Raytheon. Id. at 20. Plaintiff asserts that his Raytheon supervisors cut off this accommodation after he informed them that hew as suffering from depression, and therefore Raytheon failed to reasonably accommodate his disability. Id.

  Raytheon replies that it never granted plaintiff the accommodation of working from home through Raytheon's approved telecommuter agreement. Reply at 17. Raytheon further argues that although plaintiff contends that Raytheon should have offered to put him on a medical leave of absence, this would have been contradictory to the recommendation and treatment of plaintiff's own doctors. Id. at 17-18. Raytheon contends that it granted every accommodation that plaintiff sought. Id. at 18.

  The Court finds that plaintiff has failed to present any evidence demonstrating that a question of fact exists with regard to his failure to accommodate claim under FEHA. Plaintiff never requested an accommodation from Raytheon for his mental health disability, his doctors never suggested or prescribed any work restrictions, and plaintiff never engaged in a discussion with any of his supervisors at Raytheon regarding potential accommodations for his mental health disability. See Gelfo v. Lockheed Martin Corp., 140 Cal. App. 4th 34, 54 (2006) ("Two principles underlie a cause of action for failure to provide a reasonable accommodation. First, the employee must request an accommodation. Second, the parties must engage in an interactive process regarding the requested accommodation . . . ."). Accordingly, the Court grants summary judgment on plaintiff's failure to accommodate claim pursuant to FEHA.

  **D. Public Policy Claims**

  Plaintiff alleges that Raytheon wrongfully terminated him in violation of California public policy set forth in Article I, Section 8 of the state Constitution[2] as well as FEHA.

---

  [2] Article I, Section 8 of the California Constitution states: "A person may not be disqualified from entering or pursuing a business, profession, vocation, or employment

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-6461CAS (CWx) | Date | November 2, 2009 |
|---|---|---|---|
| Title | JAMES EUGENE KLEIN v. RAYTHEON COMPANY, ET AL. | | |

Compl. ¶ 34. Plaintiff also alleges that Raytheon "retaliated against [him] for complaining to upper management and Human Resources regarding his mistreatment for using defendant's EAP, medical discrimination for repeated uses of psychiatrists and psychologists and failure(s) to accommodate plaintiff and defendant's constant egregious cruelty of plaintiff." Compl. ¶ 39.

To establish plaintiff's claim of wrongful termination in violation of public policy, plaintiff must prove: (1) an employee-employer relationship; (2) an adverse employment action; (3) the adverse action was a violation of public policy; (4) the relationship was a legal cause of plaintiff's damages; and (5) plaintiff was damaged. Holmes v. Gen. Dynamics Corp., 17 Cal. App. 4th 1418, 1426 (1993).

To establish a prima facie retaliation claim under FEHA,[3] plaintiff must show that (1) he "engaged in activities protected by the FEHA, (2) [Raytheon] subsequently took adverse employment action against [him], and (3) there was a causal connection between the protected activity and the adverse employment action." Miller, 36 Cal 4th at 472.

Raytheon argues that plaintiff did not suffer an adverse employment action because he was not constructively terminated. Mot. at 24. Raytheon asserts that for reasons previously stated, plaintiff cannot establish any of the prongs required to establish a violation of public policy except the employee-employer relationship prong. Id. Raytheon further contends that although plaintiff alleges that he was retaliated against in violation of public policy for using Raytheon's EAP program, plaintiff admitted that he had previously used the services of the EAP program without incident, and there is no

---

because of sex, race, creed, color, or national or ethnic origin."

[3] "FEHA protects employees against retaliation for filing a complaint or participating in proceedings or hearings under the act, or for opposing conduct made unlawful by the act." Miller v. Dept. of Corrections, 36 Cal 4th 446, 472 (2005) (citing Cal. Gov. Code, § 12940(h)). Specifically, section 12940(h) states that it is an unlawful employment practice for "any employer . . . or person to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part." Cal. Gov. Code, § 12940(h).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-6461CAS (CWx) | Date | November 2, 2009 |
|---|---|---|---|
| Title | JAMES EUGENE KLEIN v. RAYTHEON COMPANY, ET AL. | | |

evidence that the Company's investigation or the conduct of the October 11 meeting had anything to do with plaintiff having sought or obtained assistance from the EAP program. Id. Indeed, Raytheon argues that plaintiff admitted that Shannon encouraged him to use the EAP program. Id.

Plaintiff responds that he was constructively terminated, and that he can meet all the remaining prongs of a violation of public policy claim. Opp'n at 22. Plaintiff argues that Raytheon's claims that plaintiff had "previously used the services of the EAP program without incident" are disingenuous. Id. Plaintiff asserts that Raytheon's discrimination, retaliation, and constructive termination of plaintiff at the October 11 meeting occurred in response to plaintiff using the EAP program. Id. Raytheon replies that plaintiff has not rebutted the majority of Raytheon's arguments with respect to his claim of violation of public policy. Reply at 19.

The Court finds that questions of fact exist regarding plaintiff's common law tort claim for wrongful termination under FEHA.[4] First, it is undisputed that plaintiff and Raytheon have an employer-employee relationship. Holmes, 17 Cal. App. 4th at 1426. Second, as discussed supra, questions of fact exist as to whether plaintiff was constructively terminated. Id. Third, as discussed supra, questions of fact exist as to whether plaintiff's alleged constructive termination was in violation of FEHA. Id.; see also City of Moorpark v. Superior Court, 18 Cal. 4th 1143, 1161 (1998) ("We conclude that disability discrimination [under FEHA] can form the basis of a common law wrongful discharge claim."). Finally, questions of fact exist as to whether plaintiff can show he was damaged as a result of the termination. Holmes, 17 Cal. App. 4th at 1426. Therefore, the Court denies Raytheon's motion for summary judgment on plaintiff's wrongful termination claim pursuant to FEHA.

The Court further finds that plaintiff has failed to present any evidence demonstrating that a question of fact exists with regard to his retaliation claim under FEHA. No facts in the record indicate that plaintiff was mistreated or otherwise retaliated against for using Raytheon's EAP program, or that plaintiff ever complained to

---

[4] The Court concludes that plaintiff's claim under Cal. Const. Art. 1, § 8 fails, because plaintiff has not alleged that he was subjected to any of the bases of discrimination prohibited by this section of the California Constitution.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-6461CAS (CWx) | Date | November 2, 2009 |
|---|---|---|---|
| Title | JAMES EUGENE KLEIN v. RAYTHEON COMPANY, ET AL. | | |

upper management or human resources about any such mistreatment. Accordingly, plaintiff's retaliation claim under FEHA fails.

### E.   Punitive Damages Claims

Raytheon argues that punitive damages cannot be imposed against Raytheon for any alleged misconduct stemming from plaintiff's claims for discrimination or retaliation because Procopio, Caires, Shannon, Cook, and Shamaly are not corporate officers, directors, or managing agents of Raytheon. Mot. at 25 (citing White v. Ultramar, Inc., 21 Cal. 4th 563, 573 (1999)). Raytheon argues that although liability for punitive damages may also be imposed where a managing agent authorizes or ratifies the alleged malicious acts, that is not the situation here. Id. (citing Cal. Civ. Code § 3294(a)).

Plaintiff argues that he is entitled to punitive damages if he can demonstrate that Raytheon engaged in oppression, fraud, or malice. Opp'n at 22 (citing Cal. Civ. Code § 3294). Plaintiff further argues that the question of whether to award punitive damages is a factual question for the jury to decide. Id. at 23 (citing Stevens v. Owens-Corning Fiberglas Corp., 49 Cal. App. 4th 1645, 1658 (1996) ("Whether to award punitive damages and how much to award were issues for the jury.")). Plaintiff asserts that Caires, Procopio, Cook, and Shannon acted as managing agents of Raytheon. Id. Plaintiff contends that Procopio had the authority to organize and lead the October 11 meeting, initiate an investigation against plaintiff, and constructively terminate plaintiff. Id. Plaintiff further contends that Caires, Procopio, Cook, and Shannon decided, as managing agents of Raytheon, to retaliate against plaintiff for disclosing his diagnosis of depression and insomnia to them. Id.

Raytheon replies that plaintiff has not shown that Caires, Procopio, Cook, or Shannon is a managing agent. Reply at 20 (citing White, 21 Cal. 4th at 577 ("supervisors who had no discretionary authority over decisions that ultimately determine corporate policy would not be considered managing agents, even though they may have the ability to hire or fire other employees."); Meyers v. Trendwest Resorts, Inc., 148 Cal. App. 4th 1403, 1437 (2007); Ginda v. Excel Logistics, Inc., 42 F. Supp. 2d 1019, 1022 (E.D. Cal. 1999) ("In the employment context, the fact that an employee reports to a particular individual with the authority to terminate the employee's employment merely reflects that the individual is a supervisor, not that he or she was a managing agent."); Kelly-Zurian v. Wohl Shoe Co., Inc., 22 Cal. App. 4th 397, 421 (1994) (holding that although the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-6461CAS (CWx) | Date | November 2, 2009 |
|---|---|---|---|
| Title | JAMES EUGENE KLEIN v. RAYTHEON COMPANY, ET AL. | | |

supervisor was the highest-ranking person in the employer's Southern California offices and had immediate and direct control over the plaintiff, including authority to terminate her, he was not a managing agent within the meaning of Civil Code section 3294 because he did not have authority to change or set policy established at the employer's headquarters)).

The Court finds that a question of fact exists as to whether any of the managers at the October 11 meeting—Caires, Procopio, Cook, or Shannon—are managing agents of Raytheon.  See White, 21 Cal. 4th at 577.  Accordingly, the court does not grant summary judgment to Raytheon on plaintiff's claim for punitive damages.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-6461CAS (CWx) | Date | November 2, 2009 |
|---|---|---|---|
| Title | JAMES EUGENE KLEIN v. RAYTHEON COMPANY, ET AL. | | |

## IV.   CONCLUSION

In accordance with the foregoing, the Court hereby GRANTS in part and DENIES in part Raytheon's motion for summary judgment.

IT IS SO ORDERED.

|  | 00 | : | 23 |
|---|---|---|---|
| | Initials of Preparer | | CMJ |